IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM ARMSTRONG,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY,<br><br>Defendant. | Civil Action File No.<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff William Armstrong ("Mr. Armstrong" or "Plaintiff") files this Complaint against his former employer, The Coca-Cola Company ("Coke" or "Defendant"), as follows:

### STATEMENT OF CLAIMS, PARTIES, JURISDICTION, AND VENUE

1.

This is an action for unlawful race discrimination and retaliation in employment in violation of 42 U.S.C. § 1981 ("Section 1981").

2.

Coke is a foreign for-profit corporation incorporated in Delaware but with its principal place of business and global headquarters located at One Coca-Cola Plaza, N.W., Atlanta, Georgia, 30313.

3.

Coke may be served with process through its Registered Agent, CT Corporation System, located at 289 S. Culver Street, Lawrenceville, Georgia, 30046-4805.

4.

Mr. Armstrong was an employee of Defendant as that term is defined under Section 1981.

5.

This Court has personal jurisdiction over the parties and subject matter jurisdiction over all claims asserted by Mr. Armstrong.

6.

Venue is proper because the acts, events, and occurrences giving rise to Mr. Armstrong's claims took place within this judicial district and division.

## FACTUAL BACKGROUND

### Armstrong's Employment with Coke

7.

The Coca-Cola Company is a North American multinational beverage corporation headquartered in Atlanta, Georgia. The Coca-Cola Company has

interests in the manufacturing, retailing, and marketing of non-alcoholic beverage concentrates and syrups, and alcoholic beverages.

8.

Mr. Armstrong dedicated his entire working life to Coke or one of its affiliated companies. He began his Coke career working on a Coke delivery truck in Virginia 30 years ago when he was just 20 years old.

9.

Because of his unique experience understanding Coke's operations literally from the ground up, he was promoted time and again and ended up as a Grade 12 Management employee, an unheard-of achievement for someone with his background and beginning with Coke.

10.

At the time of his termination, Mr. Armstrong had risen to the position of Senior Project Manager for Coke.

11.

Coke or its subsidiaries own and maintain a multi-billion dollar commercial real estate portfolio with assets located worldwide.

12.

For the last four-plus years, Mr. Armstrong was responsible for managing and overseeing Coke workplace construction projects with budgets totaling in the hundreds of millions of dollars all over the world as Senior Project Manager.

13.

Prior to the pandemic, Mr. Armstrong flew constantly on behalf of Coke in 2019 out of his home base in Atlanta to manage these million-dollar construction projects, logging tens of thousands of miles in connection with them.

14.

Most recently, Mr. Armstrong was responsible for the construction of the TCP and World of Coca-Cola building refurbishment projects, valued at over $120,000,000, while providing subject matter expert support to the Coke TEC refurbishment project.

15.

These were long-term, ongoing Coke construction projects not scheduled for substantial completion until 2029.

## **Coke Retaliates Against Armstrong for his *Bona Fide* Reporting of Discriminatory Bidding Processes for the Multi-Million Dollar Projects**

16.

Coke sent out requests for information for bids ("RFI's") to potential general contractors for construction work for the TEC and TCP projects on June 14, 2021, with responses due on July 2, 2021.

17.

Because of Coke's high profile in Atlanta and worldwide, and the significant monetary value of the projects, these RFI's were delivered anonymously to a select number of capable and qualified potential vendors through CBRE, an outside company that handles such matters for Coke.

18.

This anonymous bidding process is meant to ensure that the construction money being spent by Coke goes to the most qualified bidder, and not to a company as the result of favoritism or unlawful motive.

19.

Thinking the anonymous bidding process was safely underway, according to Coke's internal policy, Mr. Armstrong travelled to Mexico for work on June 22, 2021.

20.

While Mr. Armstrong was away on business in Mexico, Coke deviated from its standard contracting practices with respect to the multi-million dollar TCP and TEC projects that were underway in Atlanta.

21.

Hasan Jones, former Manager-Facilities at Coke, took an interest in these projects.

22.

Mr. Jones was the head of a group of managers at Coke, including Eyvon Austin and Fernando Hernandez, internally referred to as the "Justice League," due to their focus on increasing diversity, particularly African American or Black inclusion, within the company.

23.

Prior to this instance, Mr. Jones was never regularly involved in the RFI process with Coke construction refurbishment projects like the TCP or TEC projects, nor did he work on any of Mr. Armstrong's previous construction projects.

24.

After the initial RFI's and attendant schedules for the TEC and TCP had been sent to the original select and qualified companies, Mr. Jones effectively attempted to take over the process.

25.

At Mr. Jones's insistence, Anthony Otite, Coke Procurement Director, caused the RFI's to be resent on June 23, 2021 to an additional twelve "African American-owned firms."

26.

By Friday, June 25, 2021, Hasan Jones, Austin and Otite had reconfigured the entire RFI process to include a list of African American potential construction vendors that more than twice exceeded the original list, now including African American-owned firms from outside of Atlanta as well as firms that were not fully qualified for the general contractor role.

27.

As stated in Otite's contemporaneously sent e-mail correspondence to Armstrong, his team, Austin and Jones (as well as the senior Coke Workplace management), the alteration of the normal process was intended to "get the process moving in the right direction" with respect to increasing diversity goals.

28.

Mr. Armstrong returned to Atlanta from his business trip to Mexico on June 25, 2021 and was shocked when he reviewed the significant procurement changes orchestrated by the "Justice League" in his absence.

29.

Troubled by what he had seen, Mr. Armstrong discussed the alterations with his counterpart, Adam Elliot, as well as his supervisor, Jennifer Scott, Regional Head of Americas, on Monday, June 28, 2021.

30.

Mr. Elliot agreed that the changes were extremely problematic since they were in direct contravention to Coke's written procurement/contracting procedures.

31.

Elliot also informed Mr. Armstrong that Hasan Jones had presented a PowerPoint presentation on increasing minority participation in these projects to Jeff Pitts, Global Director, and Sean Lee, Global Vice President.

32.

The PowerPoint presentation set a target of 30% of all construction funding to be spent on contracting with minority and African American-owned companies. Coke had never set such a target before for these types of projects.

33.

According to Elliot, Hasan Jones stated that he had already coached one of the African American-owned firms (C.D. Moody) on how to partner with a female-owned firmed (Leapley Construction) to make their bid for the general contractor role for the TEC and TCP projects more compelling as a female and Black-owned enterprise in violation of Coke's procurement processes.

34.

Mr. Armstrong was troubled by what he saw as a process that was intended to discriminate against non-Black or African American businesses with respect to the awarding of millions of dollars for construction projects.

35.

Mr. Armstrong accordingly reached out to his direct supervisor, Jennifer Scott, to express his concerns about the propriety and legality of the new diversity-driven TEC and TCP process.

36.

In doing so, Mr. Armstrong specifically stated that he objected to the discriminatory practices because "[t]his proposal would eliminate a large percentage of qualified vendors in the Atlanta area based solely on the skin color of the owner/owners."

37.

Mr. Armstrong further stated that, "to exclude a vendor based solely on the skin color, ethnic background or sexual orientation of an owner/owners is a process I do not believe our company should participate" and "[i]f I am asked to move forward with excluding vendors based solely on the skin color of the owners, I will need to evaluate my willingness to participate in the TEC & TCP projects."

38.

The very next day, Mr. Armstrong received a Teams meeting invitation directed to him, Adam Elliot, Fernando Hernandez, Eyvon Austin, and Anthony Otite, from Hasan Jones which stated, "I think it would be best for all stakeholders (you guys) to meet so we can discuss the construction RFP- it feels like we're stalled in the process and we (Eyvon, Fernando, and I) may have a solution that's been vetted and approved by our leadership team."

39.

This meeting was suddenly cancelled without explanation.

40.

On June 30, 2021, Mr. Armstrong discussed his concerns about Hasan Jones' involvement in the construction bidding with Jeff Pitts, Adam Elliot and Anthony Otite. Armstrong contemporaneously documented those discussions in an

e-mail to Jennifer Scott, again detailing his concerns about the discriminatory impact caused by the Justice League's interference in the projects.

41.

From June 30 until July 20, 2021, Mr. Armstrong continued to express his concerns with the management team about the discriminatory way the TEC and TCP funding was being handled.

42.

No steps were taken to address the concerns.

43.

On July 19, 2021, Mr. Armstrong informed his management team that he intended to file an internal Ethics complaint about the matter.

44.

His managers attempted to dissuade him from doing so, but Mr. Armstrong moved forward with reporting the racially discriminatory practices because he believed it was the right thing to do.

45.

Mr. Armstrong filed an Ethics complaint on July 20, 2021 in which he detailed the race discrimination taking place in the procurement process, and the

separate Department at Coke responsible for receiving such complaints began an investigation.

46.

During this investigation process, Armstrong's direct supervisor, Ms. Scott informed Mr. Armstrong that Pitts had told her that his management leaders, including Barry Simpson and Sean Lee, were now accusing Armstrong of taking "kickbacks" from contractors and were "not happy with his decision to open the Ethics complaint" rather than addressing the matter internally.

47.

The leadership's pressure on Armstrong began to mount, and he complained to his supervisor Scott again, and she advised him to file an Employee Relations complaint. He did so on July 30, 2021.

48.

The investigation of Mr. Armstrong's Ethics complaint was concluded on August 24, 2021. While the full outcome was not fully shared with Mr. Armstrong, the investigators did meet with him at its conclusion, which was very unusual for this process at Coke.

49.

The investigators informed Mr. Armstrong that their investigation confirmed that documents had been uncovered confirming Hasan Jones's direct communications with potential vendors.

50.

Just one day after the conclusion of the investigation, Coke announced that Hasan Jones would be "leaving the company."

51.

The Coke managers who complained about Mr. Armstrong's Ethics complaint were able to achieve retribution against him for doing so.

52.

On October 26, 2021, only two months after the conclusion of the Ethics investigation and the removal of Hasan Jones, Mr. Armstrong was terminated from his lifelong career at Coke by those same vindictive managers, effective December 31, 2021, ostensibly as part of a fabricated "restructuring."

53.

The facts clearly demonstrate that this supposed restructuring is a pretextual reason and the real reason for the termination was retaliation for reporting the racially discriminatory practices.

54.

Internal written updates provided on August 21, 2021 to the Coke Steering Committees for the TEC and TCP projects expressly state that the projects will require significant additional work and close management support by someone in Mr. Armstrong's supposedly eliminated position before final anticipated completion in mid-2023.

55.

In addition, multiple internal and external Coke clients have expressed in writing to Mr. Armstrong their absolute shock at the timing and supposed reason for his departure given the clear ongoing need for him and his now supposedly eliminated job.

56.

The universal view by those working on the projects at Coke apart from the retaliating managers is the projects desperately need Mr. Armstrong's expertise to be completed by 2023.

57.

Without doubt, Coke did and continues to have a strong need for the supposedly eliminated role and for Mr. Armstrong.

58.

Coke terminated Mr. Armstrong for refusing to sit quietly by while the Justice League commandeered his projects to achieve a racially discriminatory purpose.

59.

Mr. Armstrong complained about race discrimination, and Coke terminated him for it.

## THEORIES OF RECOVERY

### COUNT I:

### Discrimination in Violation of Section 1981

60.

Mr. Armstrong incorporates the foregoing allegations in the numbered paragraphs as if fully restated herein.

61.

Defendant subjected Mr. Armstrong to disparate treatment due to his race and color (White or Caucasian) in violation of 42 U.S.C. § 1981.

62.

The decision to terminate Mr. Armstrong was based on his race and color.

63.

As a result of Defendant's discriminatory actions, Mr. Armstrong suffered a loss of income and benefits, and he was denied opportunities for advancement. Defendant's actions also caused Mr. Armstrong to suffer other monetary and non-monetary damages, the amount of which shall be determined at trial.

64.

Defendant's discriminatory conduct was willful and intentional, with reckless indifference to Mr. Armstrong's federally protected rights.

## COUNT II:

### Discrimination in Violation of Section 1981

65.

Mr. Armstrong incorporates the foregoing allegations in the numbered paragraphs as if fully restated herein.

66.

Section 1981 forbids terminating an employee who opposes unlawful race discrimination in connection with contracts and employment practices.

67.

Mr. Armstrong opposed unlawful race discrimination when he opposed the racially discriminatory contract bidding process because he believed it constituted racial discrimination.

68.

Coke terminated Mr. Armstrong because he performed his duties as Director and made known to Coke's senior managers his opposition to unlawful employment and contracting practices.

69.

His retaliatory termination violated Section 1981.

70.

Coke's conduct caused Mr. Armstrong to suffer economic and non-economic damages including lost earnings and benefits, lost opportunities for advancement, pain and suffering, and emotional distress, for which Coke is liable.

**JURY DEMAND**

71.

Plaintiff demands a trial by jury on all claims so triable.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award Plaintiff compensatory damages in an amount reasonable and commensurate with the losses imposed upon him by Coke's unlawful and discriminatory acts, including his pain and emotional distress;

2. Award Plaintiff punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter Coke from such conduct in the future;

3. Grant Plaintiff injunctive relief requiring Coke to reinstate Mr. Armstrong to his position, with no interruption in service;

4. Alternatively, enter an award of front pay;

5. Enter an award of back pay;

6. Award Plaintiff pre- and post-judgment interest at the maximum rates allowable by law;

7. Grant Plaintiff special damages for all out-of-pocket costs and expenses that he would not have incurred but for Defendant's unlawful conduct, including costs incurred in bringing this action and his reasonable attorneys' fees; and

8. Grant such additional relief as this Court deems necessary, appropriate, proper, or just.

Respectfully submitted: April 15, 2022.

/s/ *M. Travis Foust*
A. Lee Parks
Georgia Bar No. 563750
lparks@pcwlawfirm.com
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

**PARKS, CHESIN & WALBERT, P.C.**
75 14th Street, N.E., 26th Floor
Atlanta, Georgia 30309
T: (404) 873-8000
F: (404) 873-8050

*Counsel for Plaintiff*